UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
GARY SAVAGE,                     )
                                   )
      Plaintiff,                 )
                                   )
          v.                    )     Case No. 1:06-CV-00081 (RCL)
                                   )
BIOPORT, INC.,                   )
                                   )
     Defendant.               )
_____)

**MEMORANDUM OPINION**

Pending before the Court is defendant's Motion to Dismiss, or in the alternative, to Transfer to the Western District of Michigan. The plaintiff, Gary Savage ("Savage"), filed a complaint alleging that defendant BioPort Corporation ("BioPort") is liable for negligence, breach of warranties, and strict products liability related to a product called anthrax vaccine absorbed ("AVA"). Having considered the pleadings, the motion, the opposition, the reply, the submitted exhibits, and the relevant law, the Court GRANTS BioPort's Motion to Transfer [8] the case to the Western District of Michigan pursuant to 28 U.S.C. § 1404(a).

I. BACKGROUND

Plaintiff Savage is a citizen of the District of Columbia. (Pl.'s Br. 2.) Defendant BioPort is a corporation with its principal place of business in Lansing, Michigan. (Def. Br. 2 ¶ 1.) Beginning in March 2000, BioPort's sole business was the manufacture and sale of AVA and certain research and development activities. (*Id*. at 2 ¶ 5.) In 2002, Savage was stationed as a sergeant in the U.S. Army at Fort Benning, Georgia. (*Id*. at 1.) In November and December of that year, Savage received three shots of AVA. (Pl.'s Comp. ¶ 66.) On January 4, 2003, Savage was hospitalized after he collapsed

while jogging. (*Id*. at ¶ 67.) Approximately one week later, Savage was transferred from Fort Benning to Walter Reed Army Medical Center in Washington, D.C. (*Id*. at ¶ 68.) Savage alleges that he suffers serious ailments from the AVA inoculations. (*Id*. at ¶ 68.)

BioPort is not registered to do business in the District of Columbia. (Def. Br. p. 2 ¶ 2.) It has never maintained an office, employee, telephone, business records, mailing address, or a registered agent for the service of process in Washington, D.C. (*Id*.) Furthermore, BioPort does not own or lease real property in the District of Columbia. (*Id*.) BioPort's other contacts in the District include: (1) sales contracts with the U.S. Department of Health and Human Services ("HHS") for the purchase of AVA (Def.'s Reply Br. 3); (2) funding provided to the Partnership for Anthrax Vaccine Education at George Washington University Medical Center (Def. Br. ¶ 12); (3) one marketing meeting in the District of Columbia with the District's Police, Fire, and Emergency Medical Services Chiefs (*Id*. ¶ 10); (4) advertisements published in *Roll Call*, *The Hill*, and *The Washington Times* newspapers (*Id*. ¶ 11); (5) contracts with the U.S. Department of Defense ("DoD") for the sale of AVA (Def. Br. 6); (6) shipments of AVA to DoD facilities in the District, made at DoD's request, amounting to less than one percent of all DoD purchases (*Id*. ¶ 7); and (7) legal counsel hired in the District to represent BioPort (*Id*. ¶ 13).

## II. DISCUSSION

### *A. Personal Jurisdiction*

BioPort's Motion to Dismiss states that this Court lacks personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. To determine whether a court has jurisdiction over a defendant, it must first "determine whether jurisdiction over a party is proper under the applicable local long-arm statue and whether it accords with the demands of due process."

*United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995). A court may find personal jurisdiction over a defendant through either general or specific jurisdiction. *Midland v. F. Hoffman-Laroche, Ltd.*, 270 F. Supp. 2d 15, 19 (D.D.C. 2003).

### 1. General Jurisdiction

District of Columbia courts may "exercise 'general jurisdiction' over a foreign corporation as to claims not arising from the corporation's conduct in the District, if the corporation is 'doing business' in the District." *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002) (citing D.C. Code § 13-334(a)). "Under the Due Process Clause, such general jurisdiction over a foreign corporation is only permissible if the defendant's business contacts with the forum district are 'continuous and systematic.'" *Id.* at 509-10 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)). At issue is whether BioPort has "'purposefully availed itself of the privilege of conducting business in the forum state' and whether the defendant's conduct in connection with the forum is such that it 'should reasonably anticipate being haled into court there.'" *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 52 (D.D.C. 2003) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)).

BioPort's contacts with the District are not sufficiently continuous and systematic to satisfy the due process requirements of general jurisdiction. As previously noted, BioPort does not maintain an office, mailing address, telephone, employee, or registered agent for service of process in the District of Columbia. (Def.'s Br. 7.) BioPort does not own or lease real property or maintain business records in the District. (*Id*.) Furthermore, BioPort has never marketed or sold AVA for distribution or use by the general public, and it has never sold AVA to a resident of the District of Columbia. (*Id*.) BioPort's contacts are sporadic and insufficient to provide it notice that BioPort

must defend itself in the District of Columbia for any claim arising outside of the District. *See Atlantigas*, 290 F. Supp. 2d at 52 (holding that contacts must be so continuous and systematic that they serve as notice of general jurisdiction to the nonresident defendant). To do so would not comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

Savage maintains that BioPort is subject to general jurisdiction under the District's long-arm statute that reaches "foreign corporations doing business in the district." D.C. Code 13-334(a); (Pl.'s Br. 6-7, 9.) Savage asserts that BioPort's contacts in the District satisfy the "doing business" requirement of the long-arm statute. (Pl.'s Br. 9.) However, the D.C. Circuit distinguishes between "'doing business' when that term signals local activity sufficient to support all-purpose (general) jurisdiction over a defendant; [and] 'transacting business,' invoked as a basis for specific adjudicatory authority over claims relating to the very business transacted. . . ." *Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987); *see also El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 675 (D.C. Cir. 1996) (holding that § 13-334(a) requires a continuing corporate presence in the forum). BioPort's limited contacts fall short of satisfying the "doing business" requirement of the long-arm statute. Its contacts are only sufficient for "transacting business," thus BioPort is only subject to specific jurisdiction arising out of its contacts in the forum. BioPort is not subject to general jurisdiction in the District of Columbia. BioPort also argues that Savage's service of process was insufficient under § 13-334(a); however, this Court does not need to address that issue to find that BioPort was not "doing business" in the forum.

2. Specific Jurisdiction

A court's jurisdiction over a defendant satisfies the demands of due process when there are "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (citations omitted). "The defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Ferrara*, 54 F.3d at (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

If a defendant does not reside within or maintain a principal place of business in the District of Columbia, then the District's long-arm statute, D.C. Code § 13-423, provides the only basis in which a court may exercise personal jurisdiction over the defendant. *Deutsch v. United States Dep't of Justice*, 881 F. Supp. 49, 52 (D.D.C. 1995), *aff'd*, 93 F.3d 986 (D.C. Cir. 1996). The statute provides, in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's –
>
>   (1) transacting any business in the District of Columbia; . . . .
>
> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C. Code § 13-423 (2006). The *transacting any business* finger of the long-arm statute "has been held by the District of Columbia Court of Appeals to be coextensive [] with the Constitution's due process limit." *Crane*, 814 F.2d at 763 (citing *Mouzavires v. Baxter*, 434 A.2d 988, 990-92 (D.C. 1981) (en banc) *cert. denied*, 455 U.S. 1006 (1982)). Thus, an out-of-state defendant may be haled into a court "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 474 (internal citations omitted) (citing *Helicopteros*, 466 U.S. at 414).

Savage relies on *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320 (D.C. App. 2000) (en banc) to satisfy the purposeful direction requirement of the specific jurisdiction analysis. (Pl.'s

5

Br. 7-8.) In *Shoppers*, a Maryland and Virginia supermarket chain placed advertisements for its stores and products in the *Washington Post* newspaper. 746 A.2d at 330. The advertisements were circulated in the District to solicit its resident's business at the nearby Maryland and Virginia stores. *Id*. at 331. The plaintiff, a District resident, was shopping at one of the Maryland stores during a period that the advertisements appeared in the newspaper. *Id*. The plaintiff suffered personal injuries after falling at the defendant's store. *Id*. The court found that the supermarket chain "conducted 'purposeful, affirmative activity within the District of Columbia,' by purposefully directing advertisements for its Maryland and Virginia stores at a potential customer base in the District of Columbia." *Id*. (internal citations omitted). Additionally, because plaintiff's claim had a discernible relationship to defendant's advertising, the defendant "could have reasonably anticipated being haled into court to defend against a personal injury suit brought by a District resident." *Id*. at 336.

BioPort's contacts with the District through its newspaper advertisements are distinguishable from those in *Shoppers*. BioPort's advertisements did not solicit the residents of the District of Columbia to purchase AVA or otherwise transact business with BioPort. All of BioPort's advertisements emphasized the United States government's limited allocation of anthrax vaccines to first responders. None of the advertisements offered to sell or provided a means within which to purchase AVA from BioPort. Neither Savage nor any other resident of the District of Columbia transacted business with BioPort to obtain AVA for personal use.

In addition, BioPort's advertisements were published over a year *after* the injury to Savage occurred. (Def.'s Reply Br. Ex. C). In *Shoppers*, the advertisements directly solicited District residents to travel to and shop at the defendant's supermarket. 746 A.2d at 323. Also the

6

advertisements in *Shoppers* were published before and at the time of the injury. *Id*. The *Shoppers* plaintiff was in the District at the time these advertisements were placed and may have been persuaded by the advertisement to travel to the defendant's store to buy groceries. *Id*. Conversely, Savage was outside the District, stationed in Fort Benning, prior to and when the injury occurred. The advertisements in *Shoppers* are distinguishable in time geography from the facts in this case.

There is no discernible relationship between BioPort's advertisements and Savage's injury. The advertisements were not purposefully directed at any class of customers that Savage might belong to, and the advertisements did not solicit business from District residents. (Def.'s Reply Br. Ex. C.) The advertisements stress the susceptibility of first responders to an anthrax attack and are directed at government officials. The advertisements do not provide any means to purchase AVA, and BioPort does not sell its products to the public. For these reasons, BioPort could not have reasonably anticipated being haled into court to defend against a personal injury suit brought by a District resident.

Savage highlights BioPort's contacts in the District and their connection to AVA; however, he offers no explanation as to how any of these contacts relate to or give rise to his claim against BioPort. The fact that nearly all of BioPort's contacts within the District are in some way related to AVA or anthrax is not surprising because the manufacture and sale of AVA is BioPort's sole means of business. Savage's claim arises from inoculations of AVA received while on active duty with the U.S. Army in Fort Benning, Georgia. (Pl.'s Br. 1.) There is no discernable relationship between Savage's claim and BioPort's contacts with HHS, George Washington University Medical Center, District of Columbia first responders, or BioPort's legal counsel. Savage has not made any assertions as to the relation between his claim and any of these contacts. Specific jurisdiction requires that a claim "arise out of" or "be related to" the minimum contacts with the forum state.

"[The Court] cannot simply aggregate all of a defendant's contacts with a state–no matter how dissimilar in terms of geography, time, or substance–as evidence of the constitutionally required minimum contacts." *RAR, Inc. v. Turner Diesel*, 107 F.3d 1272, 1277 (7th Cir. 1997). Therefore, these contacts do not support personal jurisdiction in the District of Columbia.

### 3. Department of Defense Contacts

The only contact that might give rise to Savage's claims are BioPort's contracts with DoD, which presumably supplied the AVA administered to Savage at Fort Benning. However, the Court does not find this contact to be sufficient to establish jurisdiction over BioPort. First, BioPort's contract negotiations occurred outside the District of Columbia with DoD contracting agents in Fort Detrick, Maryland and Falls Church, Virginia. (Def.'s Br. ¶ 14.) This is not sufficient to support jurisdiction under the transacting business finger of the District's long-arm statue. *See Freiman v. Lazur*, 925 F. Supp. 14, 25 (D.D.C. 1996) (finding no personal jurisdiction over defendants under § 13-423(a)(1) in part because "first, that all of the contracts at issue here . . . were executed and performed outside of the District of Columbia; second, that these government contractors do not have offices in the District; third, that defendant [Department of Energy's representative's] office and the headquarters of the Department's Office of Capital Projects and Construction is in Germantown, Maryland; and fourth, all of the parties reside and work outside of the District of Columbia.").

Second, the government contacts principle excludes BioPort's contacts with DoD from the jurisdictional calculus. "The government contacts principle establishes that entry into the District by nonresidents for the purpose of contacting federal governmental agencies cannot serve as a basis for personal jurisdiction." *Id*. at 24 (citing *Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808 (D.C. 1976)). BioPort's contacts with DoD were made in an attempt to

influence government action to purchase AVA; therefore, its contacts are excluded by the government contacts principle from establishing jurisdiction in the District of Columbia. *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786-87 (D.C. Cir. 1983) (holding that the defendant's contacts with the Interior Department in negotiations for a lease agreement were excluded by the government contacts principle); *see also Freiman*, 925 F. Supp. at 24 (holding a defendant's registration of a copyright at the U.S. Copyright Office in the District of Columbia was excluded by the government contact principle).

Finally, even if this Court were to find that these contacts constituted "transacting any business," D.C. Code § 13-423(a)(1), within the District of Columbia, Savage has not shown that his "claim for relief aris[es]" from these alleged contacts. *Id*. § 13-423(b). Savage has not brought a breach of contract claim, nor is he a party to the contracts between BioPort and DoD. The contracts are not the alleged source of Savage's injury; instead he maintains that the harm was a result of wrongdoing by BioPort in the production of AVA, which was performed in Michigan. BioPort's contacts with DoD do not satisfy the District's long-arm statute requirements; therefore, BioPort is not subject to personal jurisdiction in the District of Columbia.

### B. *Jurisdictional Discovery*

Additional discovery of BioPort's contacts will not affect the jurisdictional outcome. None of the contacts relate to or arise out of Savage's claim, nor could they conceivably lead any court to believe that general jurisdiction exists. "A district court has broad discretion in its resolution of discovery problems that arise in cases pending before it." *Hussain v. Nicholson*, 435 F.3d 359, 363 (D.C. Cir. 2006) (citing *In re Multi-Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C. Cir. 1981)). "[I]n order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the

defendant." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998). Furthermore, because a "plaintiff has met defendants' affidavit evidence with mere speculation, plaintiff's request for . . . [jurisdictional] discovery . . . must be denied" *Id*. (citing *Poe v. Babcock Int'l, PLC*, 662 F. Supp. 4, 7 (M.D. Pa. 1985) (alterations in the original)). "[I]t is reasonable for a court . . . to expect the plaintiff to show a colorable basis for jurisdiction before subjecting the defendant to intrusive and burdensome discovery." *Caribbean*, 148 F.3d at 1090 (citing *Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 312 (S.D. Ind. 1997)); *see also Atlantigas*, 290 F. Supp. 2d at 52 (holding "[w]here there is no showing of how jurisdictional discovery would help plaintiff discover anything new, 'it [is] inappropriate to subject [defendants] to the burden and expense of discovery.'") (alterations in the original) (citations omitted).

     Savage relies on *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668 (D.C. Cir. 1996) as his basis for requesting jurisdictional discovery. However, in *El-Fadl*, the plaintiff alleged specific agreements and transactions that occurred within the forum that were not merely conclusory and it was not "implausible" that discovery could establish jurisdiction. *Id*. at 676. In the present case, it is implausible that any additional discovery would be sufficient to establish general jurisdiction in the District of Columbia. The Court is further persuaded that the government contacts principle would apply to BioPort's other contacts beyond those with DoD. Furthermore, Savage has not alleged how any of the contacts relate to or arise out of his claim; therefore, specific jurisdiction could not be supplemented by discovery. This Court denies plaintiff's request for jurisdictional discovery.

III. CONCLUSION

For the foregoing reasons, the Court will grant BioPort's Motion to Transfer [8] pursuant to 28 U.S.C. § 1404(a) to the Western District of Michigan.

An Order consistent with this Opinion will be entered.


Signed by Royce C. Lamberth, United States District Judge, October 27, 2006.